GAIDRY, J.
Rln this case, appellant appeals a second judgment rendered by a trial court vacating a prior judgment while the prior judgment was on appeal to this court. For the following reasons, we vacate the second judgment.
FACTS AND PROCEDURAL HISTORY
This case involves an order by the City Council in Gonzales, Louisiana, condemn *791 ing a residence under La. R.S. 33:4762(C).[1] The residence at issue in this case, located at 1613 East John Alan in Gonzales, was owned by Warren and Ruth Schulingkamp and mortgaged to Union Planters Bank. In response to complaints by neighbors regarding the condition of the residence, the City of Gonzales’s Chief Building Inspector and the Fire Chief conducted an inspection of the residence.
Fire Chief H. “Butch” Browning’s written report noted the following conditions in the residence: trash piled almost to ceiling height throughout the house; blocked windows throughout the house; the wired smoke detectors have been removed; exposed electrical wiring; electrical cords have been spliced and used for permanent wiring; raw sewerage leaking from the toilet and tub in the master bathroom, pooling in the master closet, and seeping from the outer wall into the yard and neighbor’s lot; multiple holes in the sheet-rock and ceilings throughout the residence; attic ladder is broken and hanging down from ceiling; an electrical space heater has been placed on top of combustible items which, if turned on, presents- an immediate fire hazard; the gas hot water heater is missing its protective | .-¡cover and boxes are piled against it; and the home is infested with mice and a snake. The residence was deemed to be an immediate threat to the safety of the occupants as well as the adjacent homes, and a “Cease and Desist” order was immediately issued and alt utilities disconnected.
■Warren C. Zalfen, Jr., a licensed home inspector, conducted an inspection of the residence on October 21, 2004, and noted the following in his report:
This home has not been maintained well on the exterior and has been virtually destroyed on the interior. All of the interior fixtures, finishes and materials will have to be removed and the entire interior of the home rebuilt ... [including] the removal of all insulation .... [A]ll of the exposed structure will require disinfection. This home was so filthy and unsanitary a health hazard actually exists. Rodent activity within the home does exist. Visible mold was observed.
During- the course of his October 21 inspection, Mr. Zalfen, who is also a licensed mold inspector and mold remediation contractor, took a swab mold sample from the master bedroom closet. An October. 27, 2004 “Mold Testing Report” notes that the residence “was totally littered with personal belongings, trash, debris, feces and many other indescribable articles.” A laboratory analysis of the mold samples revealed the presence of several types of dangerous mold, including Stachybotrys, which has been associated with lung diseases and possibly brain damage, and Penicillium Aspergillus, which attacks lung tissue and causes asthma, edema, bronchiospasms, and in chronic cases, pulmonary emphysema.
. A public hearing was held before the City Council on October 25, 2004, which was attended by both Warren Schuling-kamp and a representative of Union Planters Bank. Union Planters’ representative asked the Council to temporarily delay demolition and promised to take immediate action to remove debris, completely gut the structure, and'disinfect the | residence. The Council issued an order declaring a *792 grave public emergency as the interior of the building was in such disrepair as to cause possible immediate loss or damage to person or property. The order gave Union Planters until November 4, 2004 to obtain bids and begin completely gutting the interior of the structure and stated that if the work was not started on or before November 4, the City would hire a contractor for demolition on November 5, 2004.
Union Planters failed to begin work by the November 4 deadline. At a November 8, 2004 Council meeting, the Council once again declared a grave public emergency and ordered the structure to be demolished on or after November 11, 2004.
Union Planters appealed the City Council’s order to the Twenty-Third Judicial District Court pursuant to La. R.S. 33:4764.[2] On November 19, 2004, the district court affirmed the City Council’s condemnation order, and Union Planters filed a suspensive appeal. After the appeal was lodged, Union Planters filed an “Ex Parte Motion and Order to Grant Access Pending Suspensive Appeal” in the district court, seeking access to the property to “clean and rehabilitate [the residence] in order to protect and preserve the neighboring properties.” The district court signed the order on December 23, 2004, and Union Planters proceeded with the rehabilitation.
On April 12, 2005, while their suspensive appeal was still pending before this court, Union Planters filed a motion in the district court entitled “Motion and Memorandum for Reconsideration, Dismissal of Demolition [BOrder of City of Gonzales, and Return of Security Bond.” In this motion, Union Planters alleges that it had undertaken the responsibility to rehabilitate and repair the residence. Specifically, Union Planters alleged that it hired Industrial & Commercial Environmental, Inc. (“I.C.E.”), an environmental engineering, management, and consulting company, to perform the clean-up and rehabilitation of the residence. I.C.E. removed all of the Schulingkamp’s belongings and debris, applied seven chemical disinfectant applications to all surfaces inside the residence and three chemical applications to all outside surfaces. Union Planters filed an inspection report into the record showing that the mold which had been present in the residence had been essentially eliminated. Union Planters asserted that the residence no longer presents a grave public emergency and asked the district court to grant its Motion for Reconsideration and dismiss or annul the City Council’s order condemning the residence as moot.
After a June 1, 2005 hearing, the trial court rendered a June 17, 2005 judgment granting Union Planters’ Motion for Reconsideration, deeming the residence “rehabilitated, habitable and safe,” and declaring the residence no longer condemned. This second judgment stated:
*793 [W]hile the November 8, 2004 Order of the City of Gonzales for the destruction and demolition of the residence ... was proper as of that date, due to the remediation and rehabilitation of the residence that has taken place since that date, the Order is hereby vacated and, as such, the November 19, 2004 Judgment of this Court confirming said Order is also vacated .... [T]he City of Gonzales’ request for condemnation of the residence ... is hereby denied.
The City of Gonzales appealed suspen-sively from the June 17, 2005 judgment, asserting that the trial court erred in considering testimony and evidence regarding repairs made to the residence after the date of the | fiGonzales City Council’s Condemnation Order and after the November 19, 2004 trial court judgment.
DISCUSSION
Louisiana Code of Civil Procedure article 2088, entitled “Divesting of jurisdiction of trial court” provides:
The jurisdiction of the trial court over all matters in the case-renewable under the appeal is divested, and that, of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not renewable under the appeal, including the right to:
(1) Allow the taking of a deposition, as provided in Article 1433;
(2) Extend the return day of the appeal, as provided in Article 2125;
(3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131;
(4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132;
(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126;
(6) Grant an appeal to another party;
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code;
(9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or
(10) Set and tax costs and expert witness fees.
|7In this case, the order of appeal was signed on November 29, 2004, and the appeal bond was filed on November 24, 2004. The issue before the court on the motion for reconsideration; i.e., the propriety of the City Council’s order condemning the residence and ordering its demolition, was a matter reviewable on appeal. Therefore, the trial court was divested of its jurisdiction over these matters at the time it rendered the second judgment. Furthermore, none of the exceptions enumerated in Article 2088 are applicable to this situation. Thus, the June 17, 2005 judgment of the trial court vacating its earlier judgment and the City Council’s condemnation order is null and void for lack of jurisdiction. See Barnes v. L.M. Massey, Inc., 93-1080 (La.App. 1 Cir. 5/20/94), 637 So.2d 799, 801, writ denied, 94-2279 (La.12/9/94), 647 So.2d 1107.
*794 DECREE
For the above reasons, the June 17, 2005 judgment of the trial court is vacated. Costs of this appeal are assessed to Union Planters Bank.
JUDGMENT VACATED.

. La. R.S. 33:4762(C) provides:
C. In case of grave public emergency where the condition of the building is such as to cause possible immediate loss or damage to person or property, the governing authority may condemn the building after twenty-four hours notice served upon the owner or his agent or the occupant and attorney at law appointed to represent the absentee owner.

. La. R.S. 33:4764, entitled "Appeal from decision,” provides:
The owner, occupant, agent or other representative of the owner may appeal from the decision of the governing authority to the district court having jurisdiction over the property. The appeal shall be made by the filing of a suit against the municipality, setting forth the reasons why the decision or order of the governing body is illegal or improper and the issue shall be tried de novo and by preference in the district court. Where a grave public emergency has been declared by the governing authority, the owner of the building who desires to prevent the demolition or removal thereof must file his petition within forty-eight hours and must, at the time of the filing of the petition, furnish such bond as may be fixed by the district judge to cover any damage that might be-caused by the condition of the building.